UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

LUIS TORRES,                              :

                    Petitioner,           :

          - against -                     :          **OPINION**

GEORGE McGRATH, Acting                    :          04 Civ. 7971 (DC)
Superintendent of Wallkill
Correctional Facility,                    :

                    Respondent.           :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   LUIS TORRES
                   Petitioner, <u>Pro</u> <u>Se</u>
                   Wallkill Correctional Facility
                   Route 208, Box G
                   Wallkill, New York  12589

                   ELIOT SPITZER, Esq.
                   Attorney General for the State of New York
                   Attorney for Respondent
                        By: Luke Martland, Esq.
                            Ashlyn H. Dannelly, Esq.
                            Assistant Attorneys General
                   120 Broadway, 22nd Floor
                   New York, New York  10271

**CHIN, D.J.**

          <u>Pro</u> <u>se</u> petitioner Luis Torres petitions this Court for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Torres

pled guilty to attempted reckless endangerment in the first

degree in violation of New York Penal Law §§ 110.00 and 120.25.

He was sentenced as a second felony offender to an indeterminate

term of one and a half to three years imprisonment.  He now

contends that his constitutional rights were violated because (1)

his plea allocution was insufficient to establish his guilt and

(2) both trial and appellate counsel provided ineffective
assistance.  For the reasons that follow, the petition is denied.

**BACKGROUND**

### 1.  **The Facts**

On March 16, 2000, Torres was involved in a
confrontation with his niece and her boyfriend in an apartment on
West 143rd Street in Manhattan.  (Pet. Mem. at 2).[1]  Torres lived
in the apartment with two siblings as well as his niece.  (Id.).
Torres claims that he was stabbed by his niece during the
altercation.  (Id. at 3).

The niece complained to the police and alleged that
Torres had drawn a firearm and pointed it at her two-year old
daughter.  (See RX F at 2; RX I at 3).  According to the
complaint, Torres, while holding the gun just twelve to eighteen
inches away from the girl, squeezed the trigger, pulled back the
slide to release a bullet, placed the bullet back into the clip,
and then reinserted the clip into the gun.  (RX I at 3).  Torres
then allegedly chased the girl's parents while yelling that he
was going to cut the girl up and mail her back to them in pieces.
(Id.).

### 2.  **The Arrest and Indictment**

On March 24, 2000, Torres was arrested for the
incident.  He already had three prior felony convictions and was

---

[1]      "Pet. Mem." refers to petitioner's memorandum of law
submitted in support of his petition.  "RX" refers to
respondent's exhibits attached to the declaration of Luke
Martland dated January 31, 2005.

on parole, having served five months of a six-year term of parole. (Id.).

Torres was indicted for reckless endangerment in the first degree and menacing in the second degree. (Id.). On April 14, 2000, he entered a plea of not guilty. (Id.). On June 21, 2000, he agreed to plead guilty to the lesser offense of attempted reckless endangerment in the first degree, in exchange for the minimum possible sentence of one and a half to three years imprisonment. (Id. at 2).

## 3.  **The Plea**

On July 21, 2000, Torres appeared for the guilty plea. His attorney advised the court (Michael Obus, J.) that "my client has authorized me to withdraw his previously entered plea of not guilty and enter a plea of guilty to 110/120.25, attempted reckless endangerment."  (RX N at 2-3).  The court and Torres then engaged in a colloquy:

> THE COURT:  All right, Mr. Torres, your attorney has indicated in order to resolve the case . . . that you wish to enter a plea to the reduced charge of attempted reckless endangerment in the first degree for purposes of this plea with the understanding that as [a] Class E felony, that the Court will agree to impose what is the mandatory minimum sentence you could receive in light of the fact that you have at least one prior felony conviction, that's one and one half to three years.
>
> With that understanding, have you decided to enter the plea?  Have you decided --
>
> THE DEFENDANT:  Yes.

> THE COURT: Please answer for the record yes
> or no.
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that by pleading
> guilty you are giving up your right to have a
> trial in this case? You understand that?
>
> THE DEFENDANT: Yes.

(Id. at 3). Torres further acknowledged his understanding that

by pleading guilty he was waiving his rights to confront the

People's witnesses and to present evidence on his own behalf.

(Id. at 3-4).

The court did not elicit the specific facts of the

offense, but it did review the charge with Torres as follows:

> THE COURT: And with regard to the incident
> itself, it's alleged that on March 16th of
> this year, that you engaged in conduct which
> recklessly endangered the life of another
> person.
>
> I understand, first of all, that as you
> stated in your letter, there are some other
> circumstances surrounding this incident that
> you wanted the People to be aware [of]. I
> understand that you're not accused of
> actually hurting anybody at this incident and
> you're not even accused of trying to hurt
> someone during the course of this incident,
> but if you want to resolve the case this way,
> I do need to know whether or not you are
> accepting that you engaged in conduct which
> recklessly created that risk set forth in the
> indictment.
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right, and am I correct this
> incident took place at 527 West 143rd Street
> in Manhattan?
>
> THE DEFENDANT: Yes.

(<u>Id.</u> at 4-5). After giving Torres an opportunity to confer with counsel, the court accepted the plea, noting the following:

> All right, the Court is, first of all, satisfied that the defendant has considered this matter with counsel, that he understands his rights and his alternatives and while attempted reckless endangerment would not be a charge that would be submitted to a jury at trial, for purposes of a disposition in light of the factual allocution here, it is an acceptable plea for purposes of resolving the case, and I do find the defendant under the circumstances is making a knowing and voluntary decision to resolve the case.

(<u>Id.</u> at 5).

The court then asked the clerk "to arraign" and the clerk did so:

> THE CLERK: Luis Torres, do you now wish to withdraw your previously entered plea of not guilty, and do you now plead guilty to the crime of attempted reckless endangerment in the first degree?

(<u>Id.</u> at 5-6). The transcript shows that Torres conferred with his lawyer and then responded "No." (<u>Id.</u> at 6). The transcript shows no acknowledgment from anyone that Torres had responded negatively, and the court continued the proceedings, without objection or discussion, as if Torres had responded "Yes." (<u>Id.</u> at 6-8). Indeed, the court then found that Torres was a predicate violent felony offender, based on petitioner's 1993 conviction for robbery in the first degree, and set a date for sentencing. (<u>Id.</u> at 7-8).

**4.    The Sentencing**

On July 19, 2000, Torres appeared for sentencing. (RX O at 1). His lawyer addressed the court and stated:

> Mr. Torres adamantly indicates that he never possessed a weapon, that he was never in possession of a weapon during this entire incident, and I believe the court's allocution did not include a weapon being present or used by my client.

(Id. at 3).  The court then asked, "I take it he's not asking to withdraw his plea, however?"  Torres's counsel responded, "No, judge."  (Id.).  The court then gave both counsel and Torres himself a further opportunity to speak:

> THE COURT:  Is there anything else either you or he wishes to say at this point?
>
> [DEFENSE COUNSEL]:  I'm not sure if my client wishes to say anything.
>
> THE DEFENDANT:  No.
>
> [DEFENSE COUNSEL]:  No, your Honor.

(Id.).  The court then observed:

> All right.  The defendant, of course, did enter a plea of guilty after a full allocution in this matter and after consulting with counsel and even now I don't understand him to be asking to withdraw that plea[.]  [O]f course the court will impose the sentence that was promised at the time of that plea, which is a period of one and one half to three years. . . .

(Id.).

As of the filing of this petition, Torres was incarcerated at Wallkill Correctional Facility pursuant to this sentence.[2]

---

[2]    Although Torres was sentenced to one and a half to three years imprisonment on July 19, 2000, he was still in custody in 2004 because he had violated his parole when he was released and he thus was returned to custody.  His sentence will be fully served on October 17, 2009.  (Resp. Mem. at 1 n.1).

## 5.   **Exhaustion of State Remedies**

On appeal, Torres was initially represented by counsel, but counsel moved for leave to withdraw because of the absence of any non-frivolous issues to raise on appeal.  (RX A, B).  On October 29, 2002, the Appellate Division affirmed the judgment and granted counsel leave to withdraw, agreeing that there were no non-frivolous points that could be raised.  (RX C).  See People v. Torres, 788 N.Y.S.2d 499 (1st Dep't 2002).

On November 19, 2002, Torres submitted a pro se application to the Court of Appeals for leave to appeal the Appellate Division's decision.  (RX D).  The Court of Appeals denied the application on June 3, 2003.  (RX E).

In the meantime, Torres filed a pro se motion pursuant to New York Criminal Procedure Law § 440.10 to vacate his conviction.  (DX F).  On August 16, 2002, Justice Obus denied the motion, holding that under New York law, a "'bargained guilty plea to a lesser crime makes unnecessary a factual basis for the particular crime confessed.'"  (DX I at 3 (quoting People v. Clairborne, 329 N.Y.S.2d 580, 580 (1972))).  He also rejected Torres's contention that his attorney had coerced him into pleading guilty.  (Id.).

On November 4, 2003, Torres submitted a pro se motion to the Appellate Division for a writ of error coram nobis, arguing that the trial court improperly accepted the guilty plea, the plea allocution was insufficient to support his conviction, and trial and appellate counsel was ineffective.  (RX J).  On May

11, 2004, the Appellate Division denied Torres's application.
(RX L).

**6.    The Habeas Petitions**

On May 4, 2004, Torres filed a habeas petition in this
Court.  See Torres v. Nichols, No. 04 Civ. 3381 (MBM).  Chief
Judge Mukasey dismissed the petition without prejudice, because
Torres had not exhausted his state remedies, as his coram nobis
petition was still pending in the First Department.  The coram
nobis petition was denied a week later.

The instant habeas petition was received by this
Court's Pro Se Office on July 1, 2004.

**DISCUSSION**

**A.    Federal Review of State Convictions**

The Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA") "placed a new restriction on the power of federal
courts to grant writs of habeas corpus to state prisoners."
Williams v. Taylor, 529 U.S. 362, 399 (2000).  AEDPA sets forth
new standards of review that make it more difficult for a habeas
petitioner to obtain federal relief from a state conviction.
AEDPA provides that:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be
> granted with respect to any claim that was
> adjudicated on the merits in State court
> proceedings unless the adjudication of the
> claim --
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as

determined by the Supreme Court of the United
States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d)(1), (2).

AEDPA has been interpreted to require a petitioner to
show not only that clearly established federal law was
erroneously or incorrectly applied, but that the application was
unreasonable.  See Williams, 529 U.S. at 411; see also Lockyer v.
Andrade, 538 U.S. 63, 66 (2003); Bell v. Cone, 535 U.S. 685, 688
(2002).  As the Second Circuit has explained: "A state court
decision is 'contrary to' Supreme Court precedent only if it
either 'arrives at a conclusion opposite to that reached by [the
Supreme Court] on a question of law' or 'confronts facts that are
materially indistinguishable from a relevant Supreme Court
precedent and arrives at [the opposite result].'"  Lainfiesta v.
Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529
U.S. at 405).  The standards set forth by AEDPA apply to all
habeas petitions filed after the statute's effective date of
April 24, 1996.  See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir.
2001) (citing Williams, 529 U.S. at 402).

Federal courts may evaluate habeas corpus petitions
only if the petitioner has exhausted his state remedies, i.e., he
(1) has "fairly presented" his federal claims to the state's
highest court and (2) "has utilized all available mechanisms to
secure appellate review of the denial of [his] claim."  28 U.S.C.

§ 2254(b)(1)(A); see Picard v. Connor, 404 U.S. 270, 275 (1971); Klein v, Harris, 667 F.2d 274, 282 (2d Cir. 1981). A petitioner may fulfill these requirements by directly appealing or collaterally attacking his conviction in the highest state court on the same factual and legal basis presented in his federal habeas petition. See Klein v. Harris, 667 F.2d at 282.

AEDPA provides that a district court may deny a claim "on the merits," even if the petitioner has failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2).

**B.  Application**

Respondent argues that the Court should dismiss Torres's petition because he failed to exhaust his state court remedies as to all his claims. Respondent argues that Torres's petition is a "mixed" petition that contains both exhausted and unexhausted claims. I do not address the exhaustion argument, however, because I deny Torres's petition on the merits. He asserts two principal claims, which I discuss in turn: (1) his plea allocution was insufficient and (2) his trial and appellate counsel were unconstitutionally ineffective.

**1.  The Sufficiency of the Allocution**

There are two aspects to Torres's challenge to the sufficiency of his guilty plea. First, he argues that because the transcript shows that he answered "No" to the clerk's question, he never agreed to plead guilty. Second, he argues that the allocution was insufficient because he did not admit to the elements of the crime. Neither argument has merit.

### a)    **The "No" Answer**

Torres correctly points out that the transcript shows that he answered "No" when the clerk asked him "do you now wish to withdraw your previously entered plea of not guilty, and do you now plead guilty to the crime of attempted reckless endangerment in the first degree?"  (RX N at 5-6).  Clearly, however, the transcript is wrong.  Either Torres in fact said "Yes," or he simply misspoke when he said "No."  If he had actually said or meant "No," an entirely different discussion would have ensued.

A court must consider the "totality of the circumstances surrounding" the entry of a plea.  See Brady v. United States, 397 U.S. 742, 757 (1970).  The totality of the circumstances here show that Torres admitted his guilt and in fact was pleading guilty.  He or his lawyer stated so several times, and he acknowledged that he knew he was waiving certain rights by entering a guilty plea.  (RX N at 2-6).  If he had actually said "No," surely his lawyer, the prosecutor, or the court would have pursued the matter.  In the end, the court set a sentencing date; it would not have done so had Torres not pled guilty.  (Id. at 6-8).

Moreover, at Torres's sentencing on July 19, 2000, neither Torres nor his counsel attempted to argue that Torres had not actually pled guilty or that he had not intended to do so.  (RX O at 1-4).  To the contrary, counsel explicitly stated that his client was not asking to withdraw his guilty plea.  (Id. at

3). Torres was then given an opportunity to address the court and he declined to do so. (Id.). In other words, he had the opportunity to tell the court that he had not intended to plead guilty or that he wanted to withdraw his plea, but he remained silent and proceeded with the sentencing. In view of all the circumstances, I conclude that, notwithstanding the "No" in the transcript, Torres in fact pled guilty.

### b) **The Factual Predicate for the Plea**

Torres also correctly points out that the trial court did not ask him about the specific facts of his criminal conduct and that the court did not elicit admissions sufficient to establish the elements of the crime. Indeed, Torres never admitted to brandishing a firearm or pointing a weapon at a child or endangering the life of any particular person. But the court did ask Torres whether he "accept[ed] that [he] engaged in conduct which recklessly created that risk set forth in the indictment," and Torres responded "Yes." (RX N at 4-5). Moments earlier the court had explained that "it's alleged that on March 16th of this year . . . you engaged in conduct which recklessly endangered the life of another person." (Id. at 4).

Hence, Torres admitted that on March 16, 2000, he engaged in conduct that recklessly endangered the life of another. These admissions were sufficient, under New York law, to establish his guilt to attempted reckless endangerment in the first degree in violation of Penal Law §§ 110.00 and 120.25.

Section 110.00 is the attempt provision. It provides that "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of the crime." N.Y. Penal Law § 110.00 (McKinney 2004).

Section 120.25 covers reckless endangerment in the first degree. It provides that "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal Law § 120.25 (McKinney 2004). Reckless endangerment in the first degree is a Class D felony. Id. Attempted reckless endangerment in the first degree is a Class E felony. See N.Y. Penal Law § 110.05(6) (McKinney Supp. 2005).

While the court did not specifically inquire about, or elicit facts sufficient to support findings of, "depraved indifference to human life" or "a grave risk of death to another," New York law does not require a factual inquiry when a defendant pleads guilty to a lesser crime than the offense charged in the indictment. See People v. Moore, 530 N.Y.S.2d 94, 96 (1988) (although allocution did not establish that defendant possessed "loaded firearm," an element of the crime, "since defendant pleaded guilty to a lesser crime than the one charged in the indictment, a factual basis for the plea was unnecessary"); People v. Flores, 655 N.Y.S.2d 3, 4 (1st Dep't 1997) ("because defendant pleaded guilty to a lesser crime than

the crime charged in the indictment, a factual basis for the plea was not required").

Nor does the United States Constitution require a factual inquiry for a court to accept a guilty plea. Indeed, the Second Circuit has squarely held that "due process does not mandate a factual basis inquiry by state courts," noting that it is Rule 11 of the Federal Rules of Criminal Procedure, "not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea." Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984) (citing cases, including McCarthy v. United States, 394 U.S. 459, 465 (1969)); accord Ames v. New York State Div. of Parole, 772 F.2d 13, 15 (2d Cir. 1985) ("The State court's [guilty plea] inquiry did not have to be patterned after Fed. R. Crim. P. 11.").

Here, Torres was indicted for reckless endangerment in the first degree, a Class D felony. He was permitted to plead guilty to a lesser offense, attempted reckless endangerment in the first degree, a Class E felony. In addition, he was promised, and received, the minimum possible sentence for a second felony offender on a Class E felony -- one and a half to three years. N.Y. Penal Law § 70.06(3)(e), (4)(b) (McKinney 2004). Had he gone to trial and been convicted of reckless endangerment in the first degree, he faced a potential sentence of three and a half to seven years, id. § 70.06(3)(d), (4)(b), or even more if he were sentenced as a persistent felony offender, id. § 70.10(2). Under these circumstances, the court was not

required -- either by state law or the federal constitution -- to conduct a factual inquiry before accepting Torres's plea.

This prong of Torres's petition is rejected.

## 2. **The Effectiveness of Counsel**

Torres next argues that his Sixth Amendment right to counsel was violated because both trial and appellate counsel were ineffective. I discuss first the applicable legal standards and second the effectiveness of trial and appellate counsel.

### a) **Applicable Legal Standards**

To prove ineffective assistance of counsel, Torres must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) he was prejudiced by counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994). To demonstrate prejudice, Torres must show that, but for counsel's errors, there is a sufficient probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.

When the court applies the Strickland test, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir.

1990) (internal citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 696-97).

Although the <u>Strickland</u> test originated for evaluating a claim of ineffective assistance of trial counsel, it has been extended to apply to appellate counsel. <u>See</u> <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999); <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994); <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel is not required to raise all non-frivolous arguments. <u>Mayo</u>, 13 F.3d at 533. Consequently, it is not sufficient to demonstrate that counsel omitted a non-frivolous argument. <u>Id.</u> "[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989). Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is "clearly stronger" and more significant than those presented. <u>Mayo</u>, 13 F.3d at 533 (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1985)).

Appellate counsel is not required to file a brief at all, if there are no non-frivolous issues to be raised. If, after a "conscientious examination" of the case, counsel concludes that the appeal is "wholly frivolous," counsel may request permission from the court to withdraw, while noting anything in the record that might arguably support the appeal. <u>Anders v. California</u>, 386 U.S. 738, 744 (1967). If the court agrees, it will grant the request, but if the court finds "any of

the legal points arguable on their merits," it must afford an indigent defendant the assistance of counsel to argue the appeal. Id.[3]  The submission of an Anders brief cannot be the basis for an ineffective assistance claim if the request to withdraw is granted by the court.  See Anders, 386 U.S. at 745 ("such handling would tend to protect counsel from the constantly increasing charge that he was ineffective").

     To show prejudice by appellate counsel's failings under the second prong of the Strickland test, petitioner must establish a reasonable probability that the omitted "claim would have been successful before the [appellate court]."  See Mayo, 13 F.3d at 534 (quoting Claudio, 982 F.2d at 803).

     **b)**   **Application**

          **(I)**   **Trial Counsel**

     Torres contends that he received constitutionally ineffective assistance because his trial counsel: (1) advised him that it was in his best interest to plead guilty to avoid a more serious sentence; (2) coerced him into pleading guilty by convincing him that the plea was potentially illegal; and (3) allowed the court to accept the guilty plea after the petitioner answered "No" to the clerk's question.

---

     [3]     Even then, appellate counsel is not required to address all nonfrivolous issues.    see also Jones v. Barnes, 463 U.S. 745, 751 (1983) ("Neither Anders nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").

Torres raised the first two issues in his 440.10 motion to the New York State Supreme Court. Justice Obus rejected both arguments. (RX I). He found that Torres's claim that trial counsel coerced him into pleading guilty was belied by the plea allocution itself. (<u>Id.</u> at 3). Torres agreed that no promises or threats were made by anyone to coerce him into pleading guilty, save the court's promise to sentence him to one and a half to three years. (RX N at 4).

Torres contends that trial counsel advised him not to go to trial because he had an estimated eighty percent chance of conviction and a potential life sentence. Even assuming trial counsel made these statements, this was neither coercion nor ineffective assistance. As the trial court found, such advice "[c]onstitute[d] nothing more than counsel's professional opinion on the strength of the People's case" and was "appropriate advice." (RX I at 4).

As to the claim that his counsel characterized the guilty plea as illegal, Justice Obus correctly found this allegation to be of no consequence, for "[t]here is no prohibition against pleading guilty to a hypothetical or otherwise legally impossible crime." (<u>Id.</u>). Under New York law, a defendant may plead guilty to a hypothetical or legally impossible crime as part of a plea bargain and he or she pleads guilty to a lesser offense in satisfaction of an indictment charging a crime carrying a heavier sentence. <u>See</u> <u>People v. Foster</u>, 278 N.Y.S.2d 603, 605-06 (1967).

In <u>Foster</u>, the defendant pled guilty to attempted manslaughter, a legally impossible crime, for attempt requires an intent to commit a crime while manslaughter involves no intent. <u>Id.</u> at 605. Because the plea was to a lesser offense than the crime charged in the indictment, the Court of Appeals upheld the guilty plea, holding:

> While there may be question whether a plea to attempted manslaughter is technically and logically consistent, such a plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit.

<u>Id.</u> at 606. The Court held that there was no due process violation. <u>Id.</u> at 605; <u>accord</u> <u>United States v. Fowler</u>, 104 F.3d 368, 1996 WL 734637, at *5 (10th Cir. 1996) (summ. order) (citing cases, including <u>Foster</u>, holding that "if a defendant substantially benefitted from a plea bargain that he entered into voluntarily and intelligently, even if he pleaded guilty to a charge that was not a crime, he is not permitted to collaterally attack that conviction").[4]

The situation here is similar. The crime of attempted reckless endangerment is "nonexistent," as the concept of intent -- required for attempt -- is inconsistent with the concept of

---

[4]    In <u>Gill v. INS</u>, 420 F.3d 82 (2d Cir. 2005), the Second Circuit held that an attempted reckless assault conviction under New York law could not be a "crime involving moral turpitude" for purposes of immigration removal proceedings, but noted that it was not "questioning the <u>state's</u> ability to hold a defendant to his plea to an attempted reckless crime (which may have made practical sense in terms of reaching a contextually appropriate sentence or sentencing range)." <u>Id.</u> at 91 (citing <u>Foster</u>).

recklessness.  See People v. Trepanier, 446 N.Y.S.2d 829, 833
(4th Dep't 1982); see also Knapik v. Ashcroft, 384 F.3d 84, 91-93
(3d Cir. 2004) (holding that intentional reckless endangerment
conviction under New York law was a "nonsensical" crime and thus
not a "crime involving moral turpitude" for purposes of
immigration removal proceedings).  The trial court here
acknowledged that the crime of attempted reckless endangerment
could not be submitted to a jury, but noted that this was "an
acceptable plea for purposes of resolving the case."  (RX N at
5).  Where a defendant pleads guilty to such a crime as part of a
negotiated compromise, thereby gaining the benefit of a lesser
sentence, there is no constitutional infirmity.

Finally, as to the claim that trial counsel was
ineffective for failing to follow up when Torres purportedly
answered "No," for the reasons discussed above, I am confident
that the transcript is incorrect.  Moreover, even if the
transcript accurately reflects what Torres said, I cannot say
that trial counsel's failure to follow-up fell below an objective
standard of reasonableness, in light of all the circumstances,
including all the clear indications that Torres intended to plead
guilty.  In addition, even if the failure to follow-up did
constitute ineffective assistance, there was no prejudice, for
Torres had further opportunity to address the propriety of his
plea.  At his sentencing, for example, he did not ask to withdraw
his plea and instead proceeded to sentencing.  Torres has not
demonstrated a sufficient probability that the outcome would have

been any different -- that he would have sought to withdraw his guilty plea -- had trial counsel followed up when Torres purportedly said "No."

The claim that trial counsel was constitutionally ineffective is rejected.

### (ii)  **Appellate Counsel**

Torres contends that appellate counsel was constitutionally ineffective for failing to pursue the issues discussed above and because appellate counsel moved to withdraw from representing Torres on appeal.  He raised these claims in his petition for a writ of error coram nobis, and the Appellate Division denied the petition in its entirety.  (RX L).  For the reasons discussed above, Torres's claims are meritless, and appellate counsel was not constitutionally ineffective for not raising them.  I discuss briefly the issue of appellate counsel's withdrawal.

Torres's appellate counsel believed there were no non-frivolous grounds for appeal and therefore moved to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967).  Appellate counsel's Anders brief asserted that the record showed that Torres's guilty plea was validly entered, and noted that Torres had received the minimum possible sentence for his offense.  (RX A).  The Appellate Division granted appellate counsel leave to withdraw, agreeing that no non-frivolous points could be raised on appeal.  See People v. Torres, 748 N.Y.S.2d 499 (2002).  I also agree.  As the "[f]ailure to make a meritless argument does

not amount to ineffective assistance," <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999), appellate counsel was not constitutionally ineffective.

In sum, petitioner has not demonstrated that he received constitutionally ineffective assistance of trial or appellate counsel. The state courts' denial of Torres's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

For the reasons set forth above, Torres's application for a writ of habeas corpus is denied and the petition is dismissed in its entirety. Because petitioner has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253 (as amended by AEDPA). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

SO ORDERED.

Dated:    New York, New York
          January 3, 2006


                                    DENNY CHIN
                                    United States District Judge

- 22 -